Approved: _____
          Lindsey Keenan
          Assistant United States Attorney

Before:   THE HONORABLE LISA MARGARET SMITH
          United States Magistrate Judge
          Southern District of New York

19 mag 2178

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

        - v. -

LINKOY BENNETT,
RENNEIL WILLIAMS,
DWAYNE BORELAND,
TIFFANY RANDOLPH,
OSHANE ROYE,
FABIAN ROBINSON, and
HARRIANN MITCHELL,

                    Defendants.

- - - - - - - - - - - - - - - - - x

SEALED COMPLAINT

Violations of
18 U.S.C. §§ 1349,
1956(h)

COUNTIES OF OFFENSE:
WESTCHESTER, BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

STEVEN MANGANELLI, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

COUNT ONE
(Conspiracy to Commit Mail and Wire Fraud)

1.  From at least in or about July 2017, up to and including September 2018, in the Southern District of New York and elsewhere, LINKOY BENNETT, RENNEIL WILLIAMS, DWAYNE BORELAND, TIFFANY RANDOLPH, and OSHANE ROYE, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343.

2.  It was a part and object of the conspiracy that LINKOY BENNETT, RENNEIL WILLIAMS, DWAYNE BORELAND, TIFFANY RANDOLPH, and OSHANE ROYE, the defendants, and others known and unknown,

willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom, such matters and things, and would and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the person to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

   3. It was further a part and an object of the conspiracy that LINKOY BENNETT, RENNEIL WILLIAMS, DWAYNE BORELAND, TIFFANY RANDOLPH, and OSHANE ROYE, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

      (Title 18, United States Code, Section 1349.)

<u>COUNT TWO</u>
(Conspiracy to Commit Money Laundering)

   4. From at least in or about July 2017, up to and including at least in or about September 2018, in the Southern District of New York and elsewhere, LINKOY BENNETT, RENNEIL WILLIAMS, DWAYNE BORELAND, TIFFANY RANDOLPH, FABIAN ROBINSON, and HARRIANN MITCHELL, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree with each other to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i), and 1956(a)(2)(B)(i).

5.      It was a part and object of the conspiracy that, in the Southern District of New York and elsewhere, LINKOY BENNETT, RENNEIL WILLIAMS, DWAYNE BORELAND, TIFFANY RANDOLPH, FABIAN ROBINSON, and HARRIANN MITCHELL, the defendants, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of specified unlawful activity, would and did knowingly conduct and attempt to conduct such financial transactions knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

6.      It was further a part and object of the conspiracy that LINKOY BENNETT, DWAYNE BORELAND, TIFFANY RANDOLPH, and RENNEIL WILLIAMS, the defendants, and others known and unknown, would and did knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7.      I am assigned to the investigation of this matter, and I base this affidavit on that experience, on my conversations with other law enforcement officials, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Scheme to Defraud

8.   My investigation in this case has revealed that from at least in or about July 2017 up to and including at least in or about September 2018, co-conspirators not named herein (the "Callers"), called elderly individuals (the "Victims") throughout the country and falsely told the Victims they won the Publishers Clearing House Sweepstakes ("PCHS"). The Callers told the Victims they needed to prepay taxes and fees before they could receive their winnings. At the Callers direction, the Victims sent cash, postal money orders, personal, and cashier's checks via UPS, and FedEx, and wired funds via services such as Western Union and Walmart to Walmart money transfer, to LINKOY BENNETT, RENNEIL WILLIAMS, DWAYNE BORELAND, TIFFANY RANDOLPH, OSHANE ROYE, FABIAN ROBINSON, and HARRIANN MITCHELL, the defendants, and others known and unknown, at various addresses, including addresses in the Bronx, White Plains, and New Rochelle, New York.

9.   LINKOY BENNETT, RENNEIL WILLIAMS, DWAYNE BORELAND, TIFFANY RANDOLPH, OSHANE ROYE, FABIAN ROBINSON, and HARRIANN MITCHELL, the defendants, collected the cash and wire transfers knowing that it was the proceeds of a fraudulent scheme. BORELAND, RANDOLPH, ROYE, ROBINSON, and MITCHELL provided the proceeds they received to BENNETT and WILLIAMS, who ultimately transferred the funds to a co-conspirator not named herein, who is believed to reside in Jamaica. The funds were transferred to Jamaica by making cash deposits to banks accounts to which multiple people had access, as well as by individuals traveling to Jamaica with the cash.

10.   My investigation has revealed that the defendants defrauded at least 30 Victims of more than $1,000,000. Most of the Victims are elderly, and many Victims are in their eighties. Below is a description of some of the fraudulent activity the defendants engaged in during the course of the scheme.

### Victim-1

11.   In or about August 2017, Victim-1, who is 87 years old and lives in Junction City, Kansas, was interviewed by law enforcement officials. Based on my review of a report by the law enforcement officer who interviewed Victim-1, documents (including shipping and bank records), conversations with other law enforcement officers and other individuals, I have learned the following:

        a. In or about April 2018, Victim-1 was contacted telephonically by an individual who identified himself as "Michael Collins." Collins informed Victim-1 she won the PCHS and advised her to send cash to various individuals to pay the taxes on her winnings.

        b. Thereafter, on or about April 14, 2018, at the direction of "Michael Collins," Victim-1 sent $718 to HARRIANN MITCHELL, the defendant, via Walmart money transfer.

        c. Based on my review of records provided by Walmart, I have learned that on or about April 14, 2018, Victim-1 transferred $710 to HARRIANN MITCHELL, the defendant, via Walmart money transfer. MITCHELL received the transfer at the Walmart in White Plains, New York. Victim-1 paid $8 to effect the transfer.

        d. On or about April 16, 2018, at the direction of "Michael Collins," Victim-1 sent $50,000 cash via FedEx to MITCHELL at an address on 217th Street, in the Bronx, New York (the "217th Street Address").

        e. Based on my review of records from CLEAR, a law enforcement database, I have learned that HARRIANN MITCHELL, the defendant, resides at the 217th Street Address.

        f. Based on my review of UPS shipping records, I have learned that on April 17, 2018, Victim 1's package, containing $50,000 cash, was delivered to HARRIANN MITCHELL, the defendant, at the 217th Street address.

        g. On or about April 17, 2018, at the direction of "Michael Collins," Victim-1 sent $105,000 cash via UPS to OSHANE ROYE, the defendant, at an address on Elder Avenue, in the Bronx, New York (the "Elder Avenue Address").

        h. Based on my review of records from CLEAR, a law enforcement database, I have learned that OSHANE ROYE, the defendant, resides at the Elder Avenue Address.

        i. Based on my review of UPS shipping records, I have learned that on or about April 18, 2018, Victim-1's package, containing $105,000 cash, was delivered to OSHANE ROYE, the defendant, at the Elder Avenue Address.

        j. On or about May 3, 2018, at the direction of "Michael Collins," Victim-1 sent $100,000 cash via FedEx to

LINKOY BENNETT, the defendant, at an address on Huguenot Street in New Rochelle, New York (the "Huguenot Street Address").

k. On or about August 17, 2018, I interviewed a supervisor at a business located at the Huguenot Street Address, and learned that as of on or about May 4, 2018, LINKOY BENNETT, the defendant, was employed by the business, and worked from the Huguenot Street Address.

l. Based on my review of FedEx shipping records, I have learned that on or about May 4, 2018, Victim-1's package, containing $100,000 cash, was delivered to LINKOY BENNETT, the defendant, at the Huguenot Street Address.

### Victim-2

12. In or about June 2018, Victim-2, who is 77 years old, and lives in Jefferson City, Missouri, was interviewed by law enforcement officials. Based on my review of a report by the law enforcement officer who interviewed Victim-2, documents (including shipping and bank records), conversations with other law enforcement officers and other individuals, I have learned the following:

a. In or about September 2017, Victim-2 was contacted telephonically by an individual who identified himself as "Michael Collins." Collins informed Victim-2 she won the PCHS and advised her to send cash to various individuals to pay the taxes on her winnings.

b. Specifically, on or about September 12, 2017, at the direction of "Michael Collins," Victim-2 sent $31,000 cash to Malachi Pope, via UPS at an address on Gibson Avenue, in White Plains, New York (the "Gibson Avenue Address").

c. Based on my review of records from CLEAR, a law enforcement database, I have learned that TIFFANY RANDOLPH, the defendant, resides at the Gibson Avenue Address, which is a single family residence.

d. Based on my review of UPS shipping records, I have learned that on or about September 13, 2017, Victim-2's package, containing $31,000 cash, was delivered to the Gibson Avenue Address. The shipping record reflect that UPS "met cust wom," meaning the package was accepted by a female at the shipping address.

### Victim-3

13.  In or about July 2018, Victim-3, who is 80 years old and lives in Midland, Michigan, was interviewed by law enforcement officials. Based on my review of a report by the law enforcement officer who interviewed Victim-3, documents (including shipping and bank records), conversations with other law enforcement officers and other individuals, I have learned the following:

      a.  In or about July 2018, Victim-3 was contacted telephonically by an individual who identified himself as "Michael Collins." Collins informed Victim-3 she won the PCHS. Victim-3 was advised to send cash to various individuals to pay the taxes on her winnings.

      b.  Specifically, on or about July 16, 2018, at the direction of "Michael Collins," Victim-3 sent $30,000 cash to Morgan Brown, via UPS at an address on Carpenter Avenue, in the Bronx, New York (the "Carpenter Avenue Address").

      c.  Based on my review of records from CLEAR, a law enforcement database, I have learned that FABIAN ROBINSON, the defendant, resides at the Carpenter Avenue Address.

      d.  Based on my review of UPS shipping records, I have learned that on or about July 17, 2018, Victim-3's package, containing $30,000 cash, was delivered to the Carpenter Avenue Address.

      e.  In an interview I conducted of FABIAN ROBINSON, the defendant, on or about September 26, 2018, ROBINSON admitted that in the summer of 2018, he received at least one package at the Carpenter Avenue Address that was not addressed to him.

### Victim-4

14.  In or about August 2017, Victim-4, who is 79 years old and lives in Sun City, Florida, was interviewed by law enforcement officials. Based on my review of a report by the law enforcement officer who interviewed Victim-4, documents (including shipping records), conversations with other law enforcement officers and other individuals, I have learned the following:

      a.  In or about July 2017, Victim-4 was contacted telephonically by an individual who identified herself as

"Deborah Holland." Holland informed Victim-4 she won the PCHS. Victim-4 was advised to send cash to various individuals to pay the taxes on her winnings.

        b. Specifically, on or about August 7, 2017, at the direction of "Deborah Holland" Victim-4 sent a package containing money to Michelle Williams, via FedEx at an address on 241st Street, in the Bronx, New York (the "241st Street Address"). Victim-4 does not remember how much money was in the package.

        c. Based on my review of records from CLEAR, a law enforcement database, I have learned that an individual ("Individual 1") resides at the 241st Street Address.

        d. Based on an interview I conducted of RENNEIL WILLIAMS, the defendant, on or about October 9, 2018, I have learned that Individual 1 is RENNEIL WILLIAMS's father.

        e. Based on an interview I conducted of a FedEx Employee on or about February 26, 2019, I have learned that on or about August 8, 2018, Victim-4's package was delivered to the 241st Street Address, and signed for by "R. Williams."

### Victim-5

15. In or about January 2019, Victim-5, who is 93 years old and lives in Charlotte, North Carolina, was interviewed by law enforcement officials. Based on my review of a report by the law enforcement officer who interviewed Victim-5, documents (including bank and postal records), conversations with other law enforcement officers and other individuals, I have learned the following:

        a. In or about July 2018, Victim-5 was contacted telephonically by an individual who informed Victim-5 she won the PCHS. Victim-5 was advised to send cash to various individuals to pay the taxes on her winnings.

        b. Specifically, on or about July 6, 2018, at the direction of the supposed PCHS representative, Victim-5 purchased a postal money order for $785.92, and addressed it to DWAYNE BORELAND, the defendant.

        c. On or about the same date, July 6, 2018, at the direction of the supposed PCHS representative, Victim-5 deposited the postal money order into BORELAND's Bank of America

checking account.

        d. Based on my review of financial records from Bank of America, I have learned that BORELAND received the deposit on or about July 6, 2018.

### The Defendants' Participation in the Conspiracy

    16. I believe there is probable cause to believe that LINKOY BENNETT, RENNEIL WILLIAMS, DWAYNE BORELAND, TIFFANY RANDOLPH, and OSHANE ROYE, the defendants, received Victims' funds by mail and/or wire, and that the Victims mailed and wired the funds because of false and fraudulent misrepresentations that the Victims had won the lottery and needed to send the funds to collect their supposed lottery winnings.

    17. Further, I believe there is probable cause to believe that LINKOY BENNETT, RENNEIL WILLIAMS, DWAYNE BORELAND, TIFFANY RANDOLPH, FABIAN ROBINSON, and HARRIANN MITCHELL, the defendants, participated in financial transactions, and/or transferred funds from the United States to Jamaica, knowing that the transactions and transfers were designed or intended to conceal or disguise the nature, location, source, ownership, or control of the proceeds of unlawful activity, in particular a fraudulent scam.

### Linkoy Bennett

    18. As described in Paragraph 11j-1, above, Victim-1 sent $100,000 to LINKOY BENNETT, the defendant.

    19. Based on my review of reports of Victims' interviews, and my review of shipping records from FedEx, and UPS, and financial records from Walmart, Western Union, and Bank of America, I have learned that in addition to the package he received from Victim-1, described in Paragraph 11j-1, LINKOY BENNETT, the defendant, received packages and wire transfers from at least seven other identified victims, totaling approximately $115,000.

    20. I interviewed LINKOY BENNETT, the defendant, on or about August 17, 2018. BENNETT stated, in substance and in part, the following:

        a. He received multiple packages on behalf of a co-conspirator not named here.

  b. He knew he and the co-conspirator were part of a scam.

  c. After BENNETT received Victims' funds, the co-conspirator not named here would come to BENNETT's apartment to collect the funds.

21. I interviewed DWAYNE BORELAND, the defendant, on or about January 4, 2019. BORELAND stated, in substance and in part, the following:

  a. He was involved in a "Jamaican lottery scam" with LINKOY BENNETT, the defendant, and a co-conspirator not named here.

  b. He gave the money he collected from Victims to BENNETT, who ultimately delivered the funds to the unnamed co-conspirator.

  c. In connection with the scam, he gave BENNETT and an unnamed co-conspirator copies of his Capital One debit card.

  d. BENNETT deposited Victims' cash into BORELAND's Capital One checking account in the United States, and the unnamed co-conspirator, and others known and unknown, withdrew the cash in Jamaica.

  e. He traveled to Jamaica carrying cash at BENNETT's request.

  f. In July 2018, he was stopped by customs in Jamaica while transporting $9,000 cash on BENNETT's behalf.

22. I interviewed HARRIANN MITCHELL, the defendant, on or about August 9, 2018, and August 20, 2018. MITCHELL stated, in substance and in part, the following:

  a. She received multiple Walmart money transfers on behalf of LINKOY BENNETT, the defendant.

  b. BENNETT said he was unable to receive the funds himself because he was "blocked" for sending funds too often.

  c. After MITCHELL received the transferred funds, she gave the money to BENNETT.

## Renneil Williams

23. As described in Paragraph 14, above, Victim-4 sent an unknown amount of money to RENNEIL WILLIAMS, the defendant.

24. Based on my review of financial records from Walmart, and shipping records from FedEx, I have learned that in addition to the package he received from Victim-4, described in Paragraph 14, RENNEIL WILLIAMS, the defendant, received a wire transfer and funds from at least one other identified victim, totaling at least $905.

25. I interviewed RENNEIL WILLIAMS, the defendant, on or about October 9, 2018, and November 16, 2018. WILLIAMS stated, in substance and in part, the following:

    a. He collected packages for an individual he identified as "T."

    b. He was aware the packages he received for "T" were part of something illegal, and contained cash from fraud victims.

    c. He recruited friends, including TIFFANY RANDOLPH, and an individual he identified as "FABIAN," to receive packages for "T."

    d. He collected packages from the friends he recruited, and gave them to "T."

    e. He also received funds via Western Union on behalf of "T."  "T" was unable to receive the funds himself because he was "blocked" from Western Union.

    f. After WILLIAMS received the transferred funds, he gave the money to "T."

26. I interviewed TIFFANY RANDOLPH, the defendant, on or about October 30, 2018. RANDOLPH stated, in substance and in part, the following:

    a. She received at least 30 packages on behalf of RENNEIL WILLIAMS, the defendant.

    b. In or about January 2018, after she received three or four packages for WILLIAMS, he asked if she was

familiar with a scam where people received phone calls stating they won the lottery. RANDOLPH stated she was familiar with such scams, and WILLIAMS raised his eyebrows and smiled. RANDOLPH understood that to mean the packages she received for WILLIAMS were part of a similar scam.

27. Based on my review of records provided by Bank of America, I have learned that between June 2017 and December 2017, a checking account held in the name of RENNEIL WILLIAMS, the defendant, received approximately eleven cash deposits, totaling approximately $9,200.

28. Based on my review of bank and shipping records, I have learned that many cash deposits to RENNEIL WILLIAMS, the defendant's, Bank of America checking account were within days of the delivery of Victims' packages to TIFFANY RANDOLPH, the defendant. For example:

    a.    Victim-2's package was received by RANDOLPH on or about September 13, 2017. On or about September 15, 2017, $500 cash was deposited into WILLIAMS's checking account.

    b.    A package from Victim-6, who is 80 years old and lives in Austin, Texas, was received by RANDOLPH on or about September 14, 2017. On or about September 15, 2017, $500 cash was deposited into WILLIAMS's checking account.

    c.    A package from Victim-7, who is 80 years old and lives in Kingwood, Texas, was received by RANDOLPH on or about November 25, 2017. On or about November 27, 2017, $400 cash was deposited into WILLIAMS's checking account.

### Dwayne Boreland

29. As described in Paragraph 15, above, Victim-5 deposited $785.92 into a checking account held in the name of DWAYNE BORELAND, the defendant.

30. Based on my review of reports of Victims' interviews, and my review of records from the United States Postal Service, and financial records from Bank of America, Tompkins Bank of Castile, and Walmart, I have learned that in addition to the postal money order he received from Victim-5, described in paragraph 15 above, DWAYNE BORELAND, the defendant, received postal money orders, cashier's checks, teller deposits, and wire transfers from at least 4 other identified victims, totaling approximately $7,500.

31.    I interviewed DWAYNE BORELAND, the defendant, on or about January 4, 2019.  BORELAND stated, in substance and in part, the following:

    a.   He was involved in a "Jamaican lottery scam" with LINKOY BENNETT, the defendant and a co-conspirator not named here.

    b.   He gave the money he collected from Victims to BENNETT, who ultimately delivered the funds to the unnamed co-conspirator.

    c.   He gave BENNETT and the unnamed co-conspirator copies of his Capital One debit card.

    d.   BENNETT deposited Victims' cash into BORELAND's Capital One checking account in the United States, and the unnamed co-conspirator, and others known and unknown, withdrew the cash in Jamaica.

    e.   He traveled to Jamaica carrying cash at BENNETT's request.

    f.   In July 2018, he was stopped by customs in Jamaica while transporting $9,000 cash on BENNETT's behalf.

32.    Based on my review of financial records provided by Capital One, and Bank of America, I have learned the following:

    a.   Between in or about April 2018 and in or about July 2018, approximately 17 cash deposits, totaling $26,000, were made in the United States to a Capital One checking account held in the name of DWAYNE BORELAND, the defendant.  Within two days of each such deposit, equivalent funds were withdrawn at ATMs in Negril and Savana La Mar, Jamaica.

    b.   Between in or about May 2018 and in or about July 2018, approximately 14 cash deposits, totaling $15,105, were made in the United States to a Bank of America checking account held in BORELAND's name.  Within days of each such deposit, equivalent funds were withdrawn at ATMs in Negril, Jamaica.

### Tiffany Randolph

33.    As described in Paragraph 12, above, Victim-2 sent $31,000 to the Gibson Avenue Address where TIFFANY RANDOLPH, the defendant, resides.

34. Based on my review of shipping records from UPS and FedEx, I have learned that in addition to the package sent by Victim-2, described in Paragraph 15, packages from at least 17 other identified Victims, totaling approximately $670,000, were delivered to the Gibson Avenue Address, addressed to TIFFANY RANDOLPH, the defendant, and others.

35. I interviewed TIFFANY RANDOLPH, the defendant, on or about October 30, 2018. RANDOLPH stated, in substance and in part, the following:

    a. She received at least 30 packages on behalf of RENNEIL WILLIAMS, the defendant.

    b. At WILLIAMS's request, she fabricated recipient names for the packages she received, because receiving so many packages in her own name would look "funny."

    c. On at least one occasion she one of the packages she received for WILLIAMS was addressed to her son.

    d. In or about January 2018, after RANDOLPH received three or four packages for WILLIAMS, he asked if she was familiar with a scam where people received phone calls stating they won the lottery. RANDOLPH stated she was familiar with such scams, and WILLIAMS raised his eyebrows and smiled. RANDOLPH understood that to mean the packages she received for WILLIAMS were part of a similar scam.

### Oshane Roye

36. As described in Paragraph 11g-i, above, Victim-1 sent $105,000 to OSHANE ROYE, the defendant.

37. I interviewed OSHANE ROYE, the defendant, on or about September 6, 2018. ROYE stated, in substance and in part, the following:

    a. He received multiple packages on behalf of LINKOY BENNETT, the defendant.

    b. Before packages arrived, BENNETT sometimes told ROYE how much cash they contained.

    c. BENNETT also told ROYE the packages were for a co-conspirator not named here.

        d.    He knew the packages he received for BENNETT were part of a scam, and believed the scam consisted of calling someone and stating they won the lottery, but needed to send money to receive their winnings.

### Fabian Robinson

38.    As described in Paragraph 13, above, Victim-3 sent $30,000 to the Carpenter Avenue Address where FABIAN ROBINSON, the defendant, resides.

39.    I interviewed FABIAN ROBINSON, the defendant, on or about September 26, 2018. ROBINSON stated, in substance and in part, the following:

        a.    He received approximately five packages on behalf of RENNEIL WILLIAMS, the defendant.

        b.    He provided at least one of the packages to WILLIAMS after receiving it.

        c.    WILLIAMS made up recipient names for the packages, and told ROBINSON to look for packages addressed to the phony names.

        d.    WILLIAMS told ROBINSON the packages contained cash, and were related to people in Jamaica running a scam.

### Harriann Mitchell

40.    As described in Paragraph 11d-f above, Victim-1 sent $50,000 to HARRIANN MITCHELL, the defendant.

41.    Based on my review of financial records from Walmart, and shipping records from UPS and FedEx, I have learned that in addition to the package she received from Victim-1, described in paragraph 11d-f, HARRIANN MITCHELL, the defendant, received packages and wire transfers from at least two other identified victims, totaling approximately $18,000.

42.    I interviewed HARRIANN MITCHELL, the defendant, on or about August 9, 2018, and August 20, 2018. MITCHELL stated, in substance and in part, the following:

        a.    She received multiple packages on behalf of LINKOY BENNETT, the defendant.

        b.    When the packages arrived, BENNETT came to her

house and got them from her.

      c.    When BENNETT opened a package and found it contained cash, he sent a text message to an unknown individual, stating: "it's good."

      d.    She knew the packages she received for BENNETT were part of a scam.

      e.    She also received multiple Walmart money transfers on BENNETT's behalf. BENNETT was unable to receive the funds himself because he was "blocked" for sending funds too often.

      f.    After receiving the transferred funds, she gave them to BENNETT.

WHEREFORE, the deponent respectfully requests that warrants be issued for the arrests LINKOY BENNETT, DWAYNE BORELAND, HARRIANN MITCHELL, TIFFANY RANDOLPH, FABIAN ROBINSON, OSHANE ROYE, and RENNEIL WILLIAMS, the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

_____
Steven J. Manganelli
Special Agent
Federal Bureau of Investigation

Sworn to before me this
5th day of March, 2019

_____
THE HONORABLE LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK